# United States Court of Appeals
## For the First Circuit

No. 10-2064

JAMES HALEY
(pending transfer to the
Estate of James Haley),

Plaintiff, Appellant,

v.

CITY OF BOSTON, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard B. Stearns, U.S. District Judge]

Before

Thompson, Selya and Dyk,[*]
Circuit Judges.

Gayle Horn, with whom Arthur Loevy, Jon Loevy, Loevy & Loevy, James Sultan, and Rankin & Sultan were on brief, for appellant.
Hugh R. Curran, with whom Bletzer & Bletzer, P.C. was on brief, for appellees.

September 19, 2011

[*]Of the Federal Circuit, sitting by designation.

**SELYA**, **Circuit Judge**.  After the discovery of previously undisclosed evidence resulted in the vacation of his murder conviction and his release from more than three decades of incarceration, James Haley brought suit to recover damages from those he deemed responsible for his plight.  The defendants — the City of Boston (the City) and the two detectives who had spearheaded the investigation of the crime — moved to dismiss.[1]  The district court granted their motion piecemeal.  See Haley v. City of Boston (Haley I), 677 F. Supp. 2d 379, 393 (D. Mass. 2009); Haley v. City of Boston (Haley II), Civ. No. 09-10197, 2010 WL 3198900, at *4 (D. Mass. Aug. 12, 2010).  Upon careful consideration of a tangled record, we affirm in part and reverse in part.

## I.  BACKGROUND

Because this appeal tests the mettle of a dismissal for failure to state a claim, Fed. R. Civ. P. 12(b)(6), we glean the facts primarily from the complaint.  See Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006).  We embellish that account with facts contained in documents incorporated within the complaint and facts susceptible to judicial notice.  See id.

---

[1] Since filing suit, Haley has passed away and the action is being pursued on behalf of his estate.  To complete the necrology, both of the individual defendants died long ago.  For ease in exposition, we refer to Haley and the detectives as if they were still living.

-2-

David Myers and Gloria Custis lived together in a Boston neighborhood. In the early morning hours of July 11, 1971, Myers was shot, stabbed, and killed in the apartment that they shared. Gloria, who was present at the time, fled to her brother's home and notified the police. When she returned to the apartment, she met a Boston police officer, Sergeant Detective Joseph Kelley, who had responded to her call. Kelley and fellow detective John Harrington took statements from both Gloria and her sister Brenda (Haley's estranged wife).

Myers, Gloria said, told her that Haley had stabbed him. She also said that she had seen Haley in the apartment that morning, brandishing a knife and a gun. She speculated that Haley had come there in search of Brenda (who had left him). Both Gloria and Brenda vouchsafed that they had not seen Haley for nearly a month prior to the murder. Brenda, who had been out of state for much of that time, said that she had last spoken to Haley over the telephone a few days before the murder and discussed her desire for a divorce.

The detectives quickly came to regard Haley as the prime suspect in the slaying. They arrested him the next day. The district attorney's office, on behalf of the Commonwealth of Massachusetts, obtained an indictment for first-degree murder.

Prior to the commencement of trial, Haley's counsel filed a blanket motion for production of evidence favorable to the

defense (including impeachment evidence). A justice of the state superior court granted this motion. In its response, the prosecution did not furnish the statements given by the sisters on the day of the murder.

The case went to trial in February of 1972. The prosecution introduced no physical evidence tying Haley to the events of July 11, 1971, relying instead on the sisters' testimony, which for the most part tracked what they had said when first interviewed. But contrary to those initial statements, both women testified that, while walking back to the apartment that Gloria shared with Myers on the day before the murder, they had seen Haley shopping in the neighborhood. The prosecution built upon this testimony to construct a theory that Haley's sighting of the women on July 10 had alerted him to Brenda's return to Boston, and her presence in the neighborhood led him to suspect that she was staying with her sister. Distressed by her decision to divorce him, he broke into the apartment looking for Brenda and, when Myers confronted him, responded by using deadly force.

Haley steadfastly denied that he had seen either sister on July 10. He maintained that he had no reason to suspect that Brenda might be at the apartment and, accordingly, had no reason to go there on July 11. Haley's sister, called as an alibi witness, testified that he was elsewhere when the murder took place.

On March 3, 1972, the jury found Haley guilty, and the trial justice subsequently sentenced him to life imprisonment. For the next thirty-four years, Haley was confined in the state correctional system. Notwithstanding the adverse verdict and the rejection of his direct appeal, see Commonwealth v. Haley, 296 N.E.2d 207 (Mass. 1973), he continued to maintain his innocence.

In 2005, Haley learned of the Massachusetts Public Records Act, Mass. Gen. Laws ch. 66, § 10. Through use of the statute, he formally requested all files relevant to his case from the district attorney's office and the Boston Police Department (BPD). The request to the district attorney's office came up dry, but the request to the BPD yielded sixty pages of documents. Included in this trove were typed statements that memorialized the interviews of Brenda and Gloria conducted on the morning of the murder. Haley realized that the substance of those statements did not match the sisters' trial testimony and, in part, supported his own version of events. He therefore filed a motion for a new trial. The Commonwealth responded by filing a motion to vacate the conviction and order a new trial. The superior court granted the latter motion.

At this juncture, the Commonwealth apparently intended to retry Haley, and he requested discovery. The district attorney's office replied that all files relating to his case had been lost.

Haley then moved to dismiss the murder charge and, on August 26, 2008, the superior court obliged.

On February 11, 2009, Haley repaired to the United States District Court for the District of Massachusetts and, invoking both 42 U.S.C. § 1983 and state law, sued the City and the two detectives. He alleged that the defendants deliberately failed to disclose the sisters' interview statements. With this as a centerpiece, the complaint asserted federal claims against the detectives (Kelley and Harrington) for violation of Haley's due process rights, together with state-law claims against them for malicious prosecution, civil conspiracy, and negligent investigation. The complaint asserted a separate set of claims against the City, under both federal and state law, including claims for municipal liability, negligent training and supervision, and respondeat superior liability.

The defendants moved to dismiss all of Haley's claims. As to the detectives, the district court granted this motion on qualified immunity grounds. Haley I, 677 F. Supp. 2d at 386-91. As to the City, the court dismissed with prejudice Haley's state-law claims for failure to make timely presentment. See id. at 392-93 (citing Mass. Gen. Laws ch. 258, § 4).

Haley moved to alter or amend the judgment. See Fed. R. Civ. P. 59(e). He argued that the district court's rescript identified no basis for dismissing his federal municipal liability

-6-

claims and that the state-law claims against the City should have been dismissed without prejudice. The district court acknowledged that it had neglected to address the municipal liability claims but concluded that, because no actionable constitutional violation on the part of the detectives had occurred, those claims were impuissant. Haley II, 2010 WL 3198900, at *2-3. Relatedly, the court denied Haley's separate request for leave to file an amended complaint designed to flesh out his municipal liability claims. Id. at *3 n.4. The court then reiterated that the state-law claims were properly dismissed with prejudice. Id. at *4. Next, with respect to the previously overlooked malicious prosecution claim, the court declared that a Massachusetts state court might find this claim timely and, therefore, declined to exercise supplemental jurisdiction over it. Id. Accordingly, the court dismissed this claim without prejudice. Id. This timely appeal followed.

## II. ANALYSIS

This appeal calls upon us to decide three sets of issues: (i) whether the district court erred in granting qualified immunity to the detectives on Haley's federal claims; (ii) whether the district court erred in dismissing Haley's federal municipal liability claims; and (iii) whether the district court erred in its disposition of a salmagundi of state-law claims. After pausing to confirm the standard of review, we grapple with these issues in sequence.

-7-

## A. **Standard of Review**.

We review an order of dismissal for failure to state a claim de novo. SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010) (en banc). In conducting this review, "we accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor." Artuso v. Vertex Pharm., Inc., 637 F.3d 1, 5 (1st Cir. 2011). We may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice. In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003).

A complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although "detailed factual allegations" are not necessary, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), the complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). The complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the

-8-

realm of mere conjecture, the complaint is open to dismissal." Tambone, 597 F.3d at 442 (citing Twombly, 550 U.S. at 555).

Appellate review is not cabined by the trial court's rationale. Rather, the court of appeals may affirm an order of dismissal on a ground not relied upon by the district court, as long as that ground is evident from the record. See Román-Cancel v. United States, 613 F.3d 37, 41 (1st Cir. 2010).

## B. **Qualified Immunity**.

Haley's complaint sketches an unattractive tableau of the detectives' conduct. Taking full advantage of the rule that a plaintiff may plead alternative and even inconsistent claims, see Fed. R. Civ. P. 8(a)(3); see also Curet-Velázquez v. ACEMLA de P.R., Inc., ___ F.3d ___, ___ (1st Cir. 2011) [No. 10-1587, slip op. at 22], the complaint prefers two distinct claims against those defendants. First, construed favorably to Haley, it can be read as alleging that the detectives' failure to disclose the witness statements, whatever the cause, violated the affirmative no-fault disclosure obligation articulated in Brady v. Maryland, 373 U.S. 83, 87 (1963). Second, it alleges that the nondisclosure was part of a deliberate attempt to secure a conviction, without regard to actual guilt or innocence, offending a broader due process proscription against intentionally framing an accused person. The detectives sought refuge from these claims under the carapace of

-9-

qualified immunity. The district court, without differentiating between the two claims, accepted that defense.

We begin our substantive discussion with first principles. Qualified immunity is a judge-made doctrine designed to "balance[] two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). The doctrine protects all state actors except "the plainly incompetent [and] those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). But despite its broad protective sweep, qualified immunity does not "shield public officials who, from an objective standpoint, should have known that their conduct was unlawful." Pagán v. Calderón, 448 F.3d 16, 31 (1st Cir. 2006) (citing Davis v. Scherer, 468 U.S. 183, 193 (1984)).

The Supreme Court has emphasized "the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam). To this end, the defense sometimes can be raised and evaluated on a motion to dismiss. See Siegert v. Gilley, 500 U.S. 226, 232-33 (1991).

Courts should follow a two-part inquiry in order to determine whether a defendant is entitled to qualified immunity.

-10-

See Pearson, 555 U.S. at 232.  We first ask "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right."  Id.  If so, we then ask "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  Id.  (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).

Prior to Pearson, courts were required to address these points sequentially.  Id. (citing Saucier, 533 U.S. at 201).  Pearson relaxed this mandate, explaining that undertaking the first inquiry "sometimes results in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case."  Id. at 236-37.  If "it is plain that a constitutional right is not clearly established," a court may grant the requested immunity without undertaking the "essentially academic exercise" of ascertaining whether the specific facts depict a constitutional violation.  Id. at 237; see Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 n.2 (4th Cir. 2010).  We follow this advice where pertinent in analyzing the dual claims that are before us.

**1.  No-Fault Nondisclosure**.  In the first of his two section 1983 forays against the detectives, Haley alleges that they abridged his due process rights by failing to comply with the disclosure obligation imposed by the Fifth and Fourteenth Amendments and explicated by the Supreme Court in Brady v.

Maryland. Because the answer to the second of the two qualified immunity inquiries required by Pearson is plain, we assume without deciding that the alleged no-fault nondisclosure constitutes a viable claim of breach and proceed directly to the question of whether the specific right upon which the claim hinges was clearly established at the time of Haley's trial.

When a public official asserts a qualified immunity defense, he may be held liable for violating a constitutional right only if "[t]he contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). This step of the qualified immunity pavane requires a reviewing court to ask whether the contours of the right would have been "sufficiently well-defined at the critical time" and, if so, "whether it would have been clear to an objectively reasonable official, situated similarly to [the defendants], that the actions taken or omitted contravened the clearly established right." Limone v. Condon, 372 F.3d 39, 48 (1st Cir. 2004). The Court's decision in Pearson did not alter these requirements. See, e.g., Díaz-Biqio v. Santini, ___ F.3d ___, ___ (1st Cir. 2011) [No. 09-2575, slip op. at 13].

In the case at hand, this inquiry starts with Brady, which was settled law at the time of Haley's trial. There, the Supreme Court held that "the suppression by the prosecution of

-12-

evidence favorable to an accused upon request violates due process." Brady, 373 U.S. at 87. This affirmative obligation applies "irrespective of the good faith or bad faith of the prosecution," id., and is sometimes referred to as imposing a no-fault disclosure obligation, see, e.g., Porter v. White, 483 F.3d 1294, 1305 (11th Cir. 2007).

The Brady Court wielded a scalpel, not a meat-axe. The Justices made it transparently clear that the newly announced no-fault disclosure obligation does not cover all evidence but, rather, only "evidence [that] is material either to guilt or to punishment." Brady, 373 U.S. at 87; see United States v. Trainor, 423 F.2d 263, 264 (1st Cir. 1970).

Approximately nine years intervened between the Court's decision in Brady and Haley's trial. The parties clash over the dimensions of Brady's materiality requirement as perceived in 1972 — a debate that centers on whether a duty then existed to disclose potentially critical information that was impeaching but not necessarily exculpatory.[2]

We need not decide when it became clearly established that Brady extended to impeachment evidence. Here, qualified immunity attaches for a different and independent reason: in 1972,

---

[2] Although the Supreme Court did not explicitly extend Brady to impeachment evidence until after 1972, see, e.g., United States v. Bagley, 473 U.S. 667, 676 (1985), there were spoor for the cognoscenti prior to that date, see, e.g., Giglio v. United States, 405 U.S. 150, 154 (1972) (citing pre-1972 cases).

it was not clearly established that <u>Brady</u>'s no-fault disclosure obligation applied to police officers as opposed to prosecutors.

By its terms, <u>Brady</u> applied only to prosecutors. 373 U.S. at 87-88. The Court's decision contained no discussion of any independent disclosure obligations that might affect police officers. In the roughly nine years between <u>Brady</u> and Haley's trial, the question of how, if at all, the <u>Brady</u> rule might apply to disclosure of material known only to police officers remained uncertain.

The Supreme Court's jurisprudence indicates the unsettled nature of the question at the relevant time. Only a few days before Haley's trial commenced, the Court reiterated that <u>Brady</u>'s no-fault disclosure obligation was the "responsibility of the prosecutor." <u>Giglio</u> v. <u>United States</u>, 405 U.S. 150, 154 (1972). The Justices did not clarify that the <u>Brady</u> duty imposed on prosecutors bore any relation to disclosure by police officers until more than twenty years after the jury convicted Haley. Even then, the described relationship was indirect. In <u>Kyles</u> v. <u>Whitley</u>, the Court held that the disclosure obligation imposed by <u>Brady</u> extends to evidence known only to police officers, but that the responsibility for obtaining and disclosing such evidence remains the duty of the prosecutor, and not the police officer. 514 U.S. 419, 437-38 (1995) (holding that <u>Brady</u>'s duty encompasses evidence "known only to police investigators and not to the

-14-

prosecutor"); see also Strickler v. Greene, 527 U.S. 263, 280-81 (1999) (identifying Kyles as the source of this elaboration of the Brady rule); Porter, 483 F.3d at 1306 (noting that a Brady claim cannot be brought against a police officer for failing to turn over evidence). The holding in Kyles is antithetic to any suggestion that in 1972, Brady's affirmative disclosure obligation reached unreservedly to no-fault nondisclosure of Brady materials known only to police officers. A fortiori, it was not then clearly established that police officers owed any affirmative no-fault obligation to criminal defendants. Consequently, the detectives are entitled to qualified immunity.

2. **Deliberate Suppression**. Haley's second section 1983 claim against the detectives is more promising. This claim draws sustenance from a line of cases flowing from the Supreme Court's seminal decision in Mooney v. Holohan, 294 U.S. 103 (1935), which held that state actors violate an accused's due process rights when they engage in "deliberate deception." Id. at 112. Haley avers that the detectives violated a proscription, developed in Mooney's pre-1972 progeny, against intentionally concealing evidence and permitting false testimony to be given at a defendant's trial.[3]

_____

[3] The complaint describes this claim partly in a separate section 1983 count for malicious prosecution. As the district court implicitly recognized, Haley I, 677 F. Supp. 2d at 385, this is not an independent claim; rather, it folds into the broader claim that the detectives' conduct violated the plaintiff's due process rights. See Torres v. Sup't of Police, 893 F.2d 404, 409-10 (1st Cir. 1990).

-15-

The defendants do not respond directly to this aspect of Haley's asseverational array but, rather, attempt to limit Haley to his basic Brady claim. See supra Part II(B)(1). We reject that gambit; it is the party suing, not the party sued, who enjoys the right to frame the claims asserted in a complaint. Here, as in Limone, "[t]o restrict the plaintiff[] to a Brady claim would require us to disregard the forest and focus single-mindedly on a particular tree." 372 F.3d at 47. Accordingly, we take Haley's case as he has pleaded it, and proceed to determine whether, as a matter of law, the detectives are entitled to qualified immunity on the deliberate suppression claim.

In evaluating this claim, we employ the traditional two-step qualified immunity pavane. See Pearson, 555 U.S. at 232-33. We start with whether the complaint alleges a violation of a constitutional right. This question is not difficult. Haley's deliberate suppression claim fits easily within the compass of the right described in Mooney. See Limone, 372 F.3d at 47. Deliberate concealment of material evidence by the police, designed to grease the skids for false testimony and encourage wrongful conviction, unarguably implicates a defendant's due process rights. See Newsome v. McCabe, 256 F.3d 747, 753 (7th Cir. 2001); see also Pierce v. Gilchrist, 359 F.3d 1279, 1299 (10th Cir. 2004). "[I]f any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from

-16-

deliberately fabricating evidence and framing individuals for crimes they did not commit." Limone, 372 F.3d at 44-45.

There is no doubt that this due process protection applies to police officers who deliberately keep the defense in the dark about important evidence. See, e.g., Jones v. City of Chicago, 856 F.2d 985, 995 (7th Cir. 1988). Haley has brought himself within the encincture of this protection and, thus, the claim satisfies the first of the two Pearson steps.

At the second step, the threshold question is whether the contours of the right were clearly established at the relevant time. See Díaz-Bigio, ___ F.3d at ___ [slip op. at 13]. Almost forty years before Haley was tried, the Supreme Court made it pellucid that due process protects an accused against a conviction procured through deliberate deception. See Mooney, 294 U.S. at 112; see also Brown v. Mississippi, 297 U.S. 278, 286 (1936). Expanding upon this principle, the Court declared, well before Haley's trial, that "allegations that imprisonment result[ing] from . . . the deliberate suppression by [the State] of evidence favorable to [the accused] . . . sufficiently charge a deprivation of rights guaranteed by the Federal Constitution." Pyle v. Kansas, 317 U.S. 213, 216 (1942). Context makes it apparent that this holding encompasses the misconduct of police officers. See id. at 215; see also Smith v. Florida, 410 F.2d 1349, 1350-51 (5th Cir. 1969).

-17-

The Court later explained that this rule protects an individual when "the State, although not soliciting false evidence, allows it to go uncorrected when it appears." Napue v. Illinois, 360 U.S. 264, 269 (1959). The Court then reaffirmed that it would countenance "no deviation from th[e] established principle" developed in those decisions. Miller v. Pate, 386 U.S. 1, 7 (1967). The upshot, then, is that, by 1972, the relevant right was clearly established.

The inquiry into whether objectively reasonable officials in the defendants' positions would have known that their actions contravened this clearly established right need not occupy us for long. This inquiry perforce focuses on the facts of the particular case. Hatch v. DCYF, 274 F.3d 12, 24 (1st Cir. 2001).

Crediting the complaint's allegations and taking all reasonable inferences therefrom in Haley's favor (as we must), the detectives investigated the murder and took the sisters' statements. They knew that the prosecution's case rested largely on the sisters' testimony — and they were aware that the prosecution's theory relied heavily on Haley's supposed sighting of the sisters on the day before the murder. Yet, even though Haley seasonably requested production of all exculpatory and impeachment evidence, the detectives purposely failed to tell either the prosecutor or defense counsel about the sisters' statements. This deliberate withholding precluded the production of the statements.

To be sure, this scenario is not precisely the same as that portrayed in any of the pre-1972 precedents. But variations between the fact pattern of a case and the fact patterns of earlier cases do not mean that the earlier cases should be disregarded. "[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question." United States v. Lanier, 520 U.S. 259, 271 (1997). Put another way, "[t]here is no requirement that the facts of previous cases be materially similar to the facts sub judice in order to trump a qualified immunity defense." Limone, 372 F.3d at 48.

So it is here. We think that, even as far back as 1972, a reasonable officer in the circumstances alleged here would have understood that parlous behavior of the sort described in Haley's complaint would contravene the constitutional right limned in Mooney and its progeny.[4] Consequently, the district court erred in dismissing this claim.

## C. **Municipal Liability**.

Haley lodges federal claims against the City, which he says arise out of standing (if unannounced) policy of nondisclosure that prevailed at the BPD. We review the district court's dismissal of these claims de novo.

---

[4] We emphasize that, at this juncture, we must credit the factual allegations of the complaint. Tambone, 597 F.3d at 441-42. We take no view as to what the evidence may show at a trial.

-19-

Unlike public officials, a municipality does not have available a qualified immunity defense with respect to damages claims alleged to result from its own constitutional infractions. Owen v. City of Independence, 445 U.S. 622, 657 (1980). Furthermore, claims of this nature are measured under current law, without regard to whether the municipality's legal obligations were clearly established when the alleged malfeasance occurred. See Barber v. City of Salem, 953 F.2d 232, 237-38 (6th Cir. 1992); see also Owen, 445 U.S. at 634, 657 (looking to precedents that post-dated the alleged violation).

Generally, a municipality "may be liable under [section 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978)). However, municipalities are not vicariously liable under section 1983 for the actions of their non-policymaking employees. See Bd. of Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403-04 (1997). They are responsible only for their own unconstitutional acts. Pembaur v. City of Cincinnati, 475 U.S. 469, 478-79 (1986). Thus, a plaintiff who brings a section 1983 action against a municipality bears the burden of showing that, "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Brown, 520 U.S. at 404 (emphasis in original)

-20-

(quoting Monell, 436 U.S. at 694). Such a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Id. at 403 (quoting Monell, 436 U.S. at 694).

Here, Haley forthrightly alleged both that the BPD had a standing policy that was itself unconstitutional and that the City failed to train its personnel in their evidence-disclosure obligations despite notice of persistent and ongoing violations. These allegations are sufficient to anchor two separate Monell-type claims, each demanding a different kind of proof.

Haley's first Monell-type claim implicates the standing policy itself. "Where a plaintiff claims that a particular municipal action itself violates federal law, or directs an employee to do so, resolving [the] issues of fault and causation is straightforward" as long as the appropriate level of culpability is established. Id. at 404. Haley's second Monell-type claim implicates an alleged failure to train. Triggering municipal liability on a claim of failure to train requires a showing that municipal decisionmakers either knew or should have known that training was inadequate but nonetheless exhibited deliberate indifference to the unconstitutional effects of those inadequacies. Id. at 407; City of Canton v. Harris, 489 U.S. 378, 387, 390 n.10 (1989). The City counters that Haley's allegations fail to state a cognizable claim on either front.

The primary thrust of the City's argument is that the absence of any constitutional violation on the part of the detectives pretermits any possibility of Monell-type recovery. See, e.g., Evans v. Avery, 100 F.3d 1033, 1039-40 (1st Cir. 1996). This argument is unavailing for two reasons. First, under current law (which applies to Monell-type claims) it is clear that the disclosure obligation imposed by Brady extends to evidence known only to police officers, see Kyles, 514 U.S. at 437-38. Second, one of Haley's claims of a constitutional violation attributable to the detectives remains in the case. See supra Part II(B)(2).

The City also contends that both municipal liability claims fail as a matter of pleading to meet the Supreme Court's recently elucidated "plausibility" requirement. See Iqbal, 129 S. Ct. at 1949; Twombly, 550 U.S. at 557. This contention elevates hope over reason.

The complaint alleges that the detectives' withholding of the sisters' statements occurred pursuant to a standing BPD policy, under which Boston police officers regularly kept helpful evidence from criminal defendants. The complaint further alleges that this policy was designed to encourage successful prosecutorial outcomes despite the existence of evidence pointing to innocence. The complaint contrasts the BPD's policy with that of the district attorney's office, which it alleges had a standing policy to disclose all known exculpatory and impeachment evidence in full

compliance with Brady.  Haley argues that, in his case, the district attorney's office was unable to fulfill its salutary (and constitutionally mandated) disclosure policy because the BPD failed to apprise it of the sisters' statements.  The end result was Haley's wrongful conviction.

Haley's second municipal liability claim draws on many of these same facts.  The difference is the allegation, made in the alternative, that the BPD's unconstitutional suppression of the sisters' statements, if not the result of a standing policy, was precipitated by poor training, to which the City was deliberately indifferent.

For its part, the City vigorously disputes the accuracy of these allegations.  It denies that the BPD either put in place an unconstitutional policy or turned a blind eye to the need for training.  But this is neither the time nor the place to resolve the factual disputes between the parties.  Whether Haley can prove what he has alleged is not the issue.  At this stage of the proceedings, we must take the complaint's factual allegations as true, and those allegations paint an ugly but plausible picture. If proven, that picture will support a finding of municipal liability.

We do not reach this conclusion lightly.  Evaluating the plausibility of a pleaded scenario is a "context-specific task that requires the reviewing court to draw on its judicial experience and

common sense." Iqbal, 129 S. Ct. at 1950.  Disclosure abuses are

a recurring problem in criminal cases, see United States v. Osorio,

929 F.2d 753, 755 (1st Cir. 1991), and the BPD's failure to

disclose the sisters' statements is wholly unexplained.  Given the

volume of cases involving nondisclosure of exculpatory information

and the instant failure to disclose statements that clearly would

have undermined the prosecution's theory of the case, we think that

the municipal liability claims pleaded by Haley step past the line

of possibility into the realm of plausibility.  See Iqbal, 129 S.

Ct. at 1949-50. Indeed, if the detectives intentionally suppressed

the discoverable statements even when such activity was condemned

by the courts (as Haley has alleged), it seems entirely plausible

that their conduct was encouraged, or at least tolerated, by the

BPD.  Although couched in general terms, Haley's allegations

contain sufficient factual content to survive a motion to dismiss

and open a window for pretrial discovery.[5]  See id.; Tambone, 597

---

[5] While the "plausibility" question is close, we think it noteworthy that Haley's complaint was filed before the Supreme Court decided Iqbal.  After the Iqbal Court clarified that the plausibility requirement applied to cases beyond the realm of antitrust, see 129 S. Ct. at 1953, Haley attempted to flesh out his municipal liability claims through a motion for leave to file a further amended complaint.  The district court denied this motion because it thought, mistakenly, that neither the original nor the proposed amended complaint properly pleaded an underlying constitutional violation on the part of the detectives.  See Haley II, 2010 WL 3198900, at *3 n.4.  Because we set aside the order of dismissal with respect to the municipal liability claims, we need not review that ruling.

F.3d at 442. Consequently, the district court erred in dismissing Haley's section 1983 claims against the City.

### D. <u>State-Law Claims</u>.

This brings us to Haley's assertion that the district court erred in dismissing certain of his state-law claims.[6] In resolving these portions of Haley's appeal, we "apply federal procedural law and state substantive law." <u>Alt. Sys. Concepts, Inc.</u> v. <u>Synopsys, Inc.</u>, 374 F.3d 23, 32 (1st Cir. 2004).

**1. <u>Malicious Prosecution</u>.** The district court dismissed Haley's state-law malicious prosecution claim without prejudice. <u>Haley II</u>, 2010 WL 3198900, at *4. The defendants asseverate that this claim should have been dismissed with prejudice. Haley has abandoned this claim, <u>see</u> <u>supra</u> note 6, and the defendants have not prosecuted a cross-appeal.

It is black-letter law that even though an appellee can argue in support of a lower court's ruling in his favor on any ground made manifest in the record (including grounds not relied on by the lower court), he cannot, without a cross-appeal, argue

---

[6] Haley has explicitly waived his intentional tort claims against the City and his common law negligence claims against the detectives. <u>See</u> Appellant's Reply Br. at 23 n.5. He has not developed on appeal any arguments related to either the district court's dismissal without prejudice of his malicious prosecution claim or the court's disposition of his respondeat superior and civil conspiracy claims. Hence, we treat those claims as abandoned. <u>See</u> <u>Wilson</u> v. <u>Moulison N. Corp.</u>, 639 F.3d 1, 6 (1st Cir. 2011); <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990).

against a judgment in his favor in an endeavor either to expand his rights or to diminish the appellant's rights. See Morley Constr. Co. v. Md. Cas. Co., 300 U.S. 185, 191 (1937); Figueroa v. Rivera, 147 F.3d 77, 81 (1st Cir. 1998). Because the City never filed its own notice of appeal, its effort to make this favorable ruling even more favorable comes to naught.

2. **Negligence Claims**. Under Massachusetts law, one who wishes to assert a negligence claim against a municipality must "present[] his claim in writing to the [defendant] within two years after the date upon which the cause of action arose." Mass. Gen. Laws ch. 258, § 4. Suit must be brought within "three years after the date upon which such cause of action accrued," id., and the plaintiff must make the required presentment prior to the commencement of suit. Id. This statute is written with conspicuous clarity, and the Massachusetts Supreme Judicial Court (SJC) has left little doubt that its plain meaning controls. See Holahan v. City of Medford, 474 N.E.2d 1117, 1119-20 (Mass. 1985).

Haley concedes that his state-law claims for negligent investigation, negligent supervision and training, and civil conspiracy fall within the purview of this statute. The district court jettisoned these claims for Haley's failure to comply with the statute. See Haley I, 677 F. Supp. 2d at 392-93; Haley II, 2010 WL 3198900, at *4.

-26-

In Massachusetts, the accrual date for a negligence claim of this genre is either the date of the injury or the date on which the plaintiff discovered (or should have discovered) the injury. See Doe v. Harbor Schs., Inc., 843 N.E.2d 1058, 1060-61 (Mass. 2006). The claims at issue accrued on February 14, 2006, when Haley received the sisters' statements pursuant to his records request. Haley I, 677 F. Supp. 2d at 384. Under the statutory time line, Haley was required to make presentment by February 14, 2008 and to bring suit by February 14, 2009. He brought suit on February 11, 2009 (within the specified period) but neglected to make presentment until April 28, 2009. This presentment was doubly flawed: it came both too late and after the filing of suit.

In an effort to paper over these deficiencies, Haley proposes an alternate time line. His proposal depends on the notion that the period for making presentment was tolled until August 26, 2008 (the date on which the state court vacated his conviction) because he could not have commenced a viable suit until then. See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994) (holding that a plaintiff, in order to recover damages for an unconstitutional conviction, must show a favorable termination of the underlying conviction); Jones v. Maloney, 910 N.E.2d 412, 415 (Mass. App. Ct. 2009) (similar).

Haley suggests that one Massachusetts jurist has concluded that Heck's holding provides a basis for tolling the

three-year limitations period for bringing suit against a municipality until the plaintiff's conviction is overturned. See Lombard v. Salisbury Police Dep't, No. 942937B, 1995 WL 1146874, at *3 (Mass. Super. Ct. June 14, 1995). But even if this reading is correct — a matter that is open to considerable doubt[7] — the three-year deadline for bringing suit and the two-year deadline for making presentment are independent requirements. The SJC does not treat those two requirements with the same flexibility. See George v. Town of Saugus, 474 N.E.2d 169, 170-72 (Mass. 1985). While occasionally recognizing that the limitations period for filing suit may be tolled, the SJC has held that a plaintiff's inability to bring a suit does not toll the running of the presentment period. See id. at 171-72 & n.3; Weaver v. Commonwealth, 438 N.E.2d 831, 835 (Mass. 1982). There is a sensible basis for this distinction: an impediment to bringing suit does not necessarily denote an inability to give notice, and a municipality should not be deprived of its right to conduct a timely investigation and build an effective defense where notice is feasible. See George, 474 N.E.2d at 171-72. That is the case here: the Heck doctrine in no way prevented Haley from effecting presentment by February 14,

---

[7] In all events, Justice Souter, writing for this court, recently pointed out the pitfalls of relying on state trial courts as authoritative arbiters of state law. See EMC Corp. v. Arturi, ___ F.3d ___, ___ (1st Cir. 2011) [No. 11-1001, slip op. at 5-6] (noting a conspicuous lack of harmony among state trial courts when it comes to defining the extent of their equitable-enforcement power).

2008.  His failure to do so subjected his state-law negligence claims against the City to dismissal.

Haley's failure to follow the statutorily prescribed sequence reinforces this result.  The statute explicitly directs that the making of presentment precede the commencement of suit.  See Mass. Gen. Laws ch. 258, § 4.  A plaintiff's obligation to follow this sequence is relieved only where the defendant has waived the requirement that presentment precede the institution of litigation.  See Holahan, 474 N.E.2d at 1119-20.  Haley has not suggested that such a waiver transpired here.

Although his argument against the dismissal of these claims fails, Haley has a fallback position.  The district court dismissed the claims with prejudice, and Haley insists that the dismissal should operate without prejudice.  This argument lacks merit.

The SJC has indicated that dismissal without prejudice would be proper in a case brought pursuant to chapter 258, section 4, only if timely presentment might still be made.  See, e.g., Commesso v. Hingham Hous. Auth., 507 N.E.2d 247, 249-50 (Mass. 1987).  Here, the presentment period had run before the district court granted the motion to dismiss (indeed, it had run before the City was served with the complaint).  In view of these facts, dismissing Haley's state-law negligence claims against the City with prejudice was altogether appropriate.

We need not linger over Haley's malicious prosecution claim. The district court declined to exercise supplemental jurisdiction over this claim and therefore dismissed it without prejudice. Haley II, 2010 WL 3198900, at *4. That disposition was proper at the time, and Haley has not contested it on appeal. While the district court may choose to re-examine its declination of supplemental jurisdiction in light of changed circumstances, see, e.g., Allen v. LaSalle Bank, N.A., 629 F.3d 364, 366, 369 (3d Cir. 2011); Shames v. Cal. Travel & Tourism Comm'n, 626 F.3d 1079, 1085 (9th Cir. 2010); Young v. Lepone, 305 F.3d 1, 17-18 (1st Cir. 2002), there is nothing for this court to do.

## E. **Remaining Issues**.

In a plea that defies reason, the defendants contend that "extraordinary circumstances" warrant dismissal of all of Haley's claims. Specifically, they complain that the loss of many relevant files, the death of several witnesses, and the passage of so many years will hamstring their ability to mount a full defense. The defendants cite no authority in support of the startling proposition that the loss of evidence over time, without any fault on the part of the plaintiff, warrants the automatic dismissal of a cognizable claim. What authority exists contradicts their position. See, e.g., In re Sealed Case, 494 F.3d 139, 150-51 (D.C. Cir. 2007) (holding that the "death of a witness . . . is not an occasion to dismiss complaints on the basis of speculation about

-30-

what the lost evidence might have suggested"); <u>Rideau</u> v. <u>Whitley</u>, 237 F.3d 472, 482-83 (5th Cir. 2000) (concluding that lost evidence did not warrant dismissal of habeas petition).

At any rate, the loss of evidence will not necessarily prevent the development of the facts of this case. Some records (such as the files of the BPD) remain available; others may still be found or located; and Haley has identified specific witnesses, including the sisters and various employees of the district attorney's office, who may be in a position to shed light on the facts. Haley bears no responsibility for the loss of evidence, and it would be unfair to prevent him from attempting to prove his case because of the foibles of others.

There is one loose end. Haley has filed a conditional motion asking us, should he prevail on this appeal, to invoke D. Mass. R. 40.1(K)(2) and order his case reassigned to a different trier. We deny the motion. Local Rule 40.1(K)(2) is addressed in the first instance to the discretion of the district court. <u>See</u> <u>Rodi</u> v. <u>S. New Engl. Sch. of Law</u>, 532 F.3d 11, 19 (1st Cir. 2008). We have no reason to believe that the able district judge will not administer this rule appropriately.

**III. CONCLUSION**

We need go no further. For the reasons elucidated above, we reverse the dismissal of Haley's section 1983 claims for deliberate suppression against the individual defendants and

municipal liability claims against the City.  We affirm the lower court's disposition of all other claims.  We deny Haley's motion to order reassignment to a different district judge.

**Affirmed in part, reversed in part, and remanded.  Costs shall be taxed in favor of the plaintiff**.