# United States Court of Appeals
## For the First Circuit

No. 12-1631

DAVID T. KENNEY, Executor of the Estate of Liko Peter Kenney,

Plaintiff, Appellant,

v.

GREGORY WILLIS FLOYD; MARK R. MONTMINY, in his individual and
official capacities as Police Chief of Franconia, NH; MARK
TAYLOR, in his individual and official capacities as Police
Sergeant of Franconia, NH; NORMAN BRUCE MCKAY, in his official
capacity as Police Corporal of Franconia, NH, posthumously;
FRANCONIA, NEW HAMPSHIRE BOARD OF SELECTMEN,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin, Circuit Judge,
and Woodlock, District Judge.[*]

Harold Burbank on brief for appellant.
Daniel J. Mullen and Ransmeier & Spellman P.C. on brief for
appellees.

November 30, 2012

---

[*] of the District of Massachusetts, sitting by designation.

**LYNCH**, <u>**Chief Judge**</u>.  In May of 2007, there were two shooting deaths, one of a civilian, Liko Kenney, and one of a police officer, Bruce McKay, following traffic stops in Franconia, New Hampshire.  Kenney shot Officer McKay four times and ran over him twice with his car.  Thereafter, a witness to the shooting, Gregory Floyd, approached Kenney and asked him to drop his weapon.  When Kenney refused, Floyd shot and killed Kenney, fearing that Kenney might shoot Floyd or his son, who had gone to McKay's assistance.

In this civil rights action, under 42 U.S.C. § 1983, David T. Kenney,[1] the civilian victim's father and the executor of his son's estate, sued Officer McKay, the town of Franconia, and its police officials, as well as Floyd.  Plaintiff appeals from a district court order granting the town and police defendants' motion for summary judgment as to all federal claims.  <u>Estate of Kenney</u> v. <u>Floyd</u>, 10-CV-181-PB, 2012 WL 642810 (D.N.H. Feb. 28, 2012).  We affirm.

I.

On May 11, 2007, Franconia Police Corporal Bruce McKay stopped a car driven by Liko Kenney, in which Caleb Macaulay was a passenger, for having an expired vehicle registration.  Kenney had

---

[1] For clarity, we will refer to Liko Kenney as "Kenney" and to David Kenney as "plaintiff."

been detained by Officer McKay once before on January 26, 2003.[2] Plaintiff alleges that as a result of hard feelings after this 2003 incident, Kenney asked Officer McKay to call another police officer to the scene of the May 2007 stop. When McKay allegedly denied his request, Kenney drove off, without McKay's permission, towards a nearby building owned by his family.

Officer McKay quickly went back to his cruiser to pursue Kenney and accelerated past Kenney's car. Officer McKay then turned his SUV-cruiser so that it faced and blocked Kenney's car. Officer McKay then used his car to push Kenney's vehicle off to the side of the road, successfully moving it into a driveway. McKay got out of his cruiser and went to Kenney's stopped car and pepper sprayed both Kenney and Macaulay. As McKay turned back to his cruiser, Kenney drew a .45 caliber handgun and shot Officer McKay multiple times, mortally wounding him, and then drove his car over McKay. Defendant Gregory Floyd and his son witnessed the shooting and left their own vehicle to assist Officer McKay. Floyd picked up McKay's service revolver and, in an apparent effort to protect himself, his son, and Officer McKay, shot and killed Kenney.

The federal court complaint asserted that Officer McKay violated Kenney's Fourth Amendment rights by seizing him without probable cause and by employing excessive force during the second

---

[2] While the original complaint covered both the 2003 and 2007 events, the claims about the 2003 events were dismissed on statute of limitations grounds and that dismissal was not appealed.

-3-

stop. The complaint also alleged that Officer McKay's supervisors and the Town of Franconia violated Kenney's Fourth Amendment rights because they were aware of Officer McKay's "proclivity for using excessive force" and failed to take appropriate remedial action.

On November 15, 2011, defendants moved for summary judgment, arguing that the undisputed material facts established that no deprivation of Kenney's constitutional rights had occurred. Defendants' motion for summary judgment was based on and supported by a report from the Attorney General of New Hampshire concerning the deaths and the incident. The report summarized and assessed, inter alia, eye-witness accounts of the incident, video and audio recordings from Officer McKay's vehicle and from Franconia police dispatch, and forensic evidence collected at the scene. It concluded on the basis of this material that Officer McKay had reasonably used non-deadly physical force on Kenney, N.H. Rev. Stat. Ann. § 627:5, I, that Kenney had unlawfully used deadly force on Officer McKay, id. § 627:4, II, and that Gregory Floyd had acted justifiably. Plaintiff did not object to consideration of the report as evidence.

In opposition, plaintiff, on December 19, 2011, submitted three affidavits. None of these affidavits were from witnesses to the May 2007 traffic stops. Rather, they were affidavits from (1) Tom Nickels, a private investigator hired by the Kenney family; (2) Bradford Whipple, a retired police officer who had worked with

Officer McKay; and (3) Christopher King, a journalist who covered New Hampshire civil rights cases. Each affidavit was replete with hearsay statements that others had purportedly made to affiants.

On February 28, 2011, the district court granted defendants' motion for summary judgment, concluding that plaintiff lacked sufficient evidence to prove any violation of Kenney's Fourth Amendment rights had occurred. First, as to the justification for the initial traffic stop, plaintiff failed to provide any evidence that Kenney's vehicle registration had not expired or that Officer McKay had no basis for a stop. See N.H. Rev. Stat. Ann. § 261:40 (making it unlawful to drive with an expired registration). Second, Officer McKay's use of non-deadly force thereafter was reasonable in light of Kenney's decision to flee from the initial traffic stop. The only evidence offered to the contrary were statements by Caleb Macaulay, Kenney's passenger, contained in the affidavit of Tom Nickels. The district court held that these statements, as recounted in the Nickels affidavit, were inadmissible hearsay, and so incapable of defeating a motion for summary judgment. See, e.g., Dávila v. Corporación De Puerto Rico Para La Difusión Pública, 498 F.3d 9, 17 (1st Cir. 2007); Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990). The district court also ruled that the claims for supervisory and municipal liability necessarily failed, as both required plaintiff to show a constitutional violation by Officer McKay. See, e.g., Haley v.

-5-

City of Boston, 657 F.3d 39, 51 (1st Cir. 2011); Seekamp v. Michaud, 109 F.3d 802, 808 (1st Cir. 1997).

On March 27, 2012, plaintiff moved for reconsideration, relying again on the contents of the three affidavits and mentioning Fed. R. Civ. P. 59(e). On April 19, 2012, the district court denied plaintiff's motion, explaining that:

> [M]uch of the material that the plaintiff relied on in opposition to the [defendants'] motion [for summary judgment] was not in a form that would be admissible in evidence. When I considered only the materials of evidentiary quality, they were not sufficient to withstand the defendants' summary judgment challenge. The supplemental motion [for reconsideration] presents no new evidence, and argument, no matter how forcefully presented, cannot substitute for evidence.

This timely appeal ensued.

## II.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On appeal, plaintiff argues that the district court committed error in not considering portions of its evidence and in not allowing its Fed. R. Civ. P. 59(e) motion. Defendants reply that, as to each element of plaintiff's burden of proof, plaintiff's purported "facts" are either immaterial or violate the evidentiary standards for summary judgment.

We review the district court's grant of summary judgment de novo, Ayala-Sepúlveda v. Municipality of San Germán, 671 F.3d 24, 30 (1st Cir. 2012), drawing all reasonable inferences in the nonmovant's favor, Lockridge v. The Univ. Of Me. Sys., 597 F.3d 464, 468 (1st Cir. 2010). "As to issues on which the summary judgment target bears the ultimate burden of proof, she cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995).

Under the Fourth Amendment, the initial traffic stop must have been supported by a reasonable suspicion that a traffic violation occurred. United States v. Chaney, 584 F.3d 20, 24 (1st Cir. 2009); see also United States v. Chaney, 647 F.3d 401, 408 (1st Cir. 2011). Reasonable suspicion is less than probable cause and more than a hunch. United States v. De Jesús-Viera, 655 F.3d 52, 58 (1st Cir. 2011) cert. denied, 132 S. Ct. 1045 (2012); United States v. Wright, 582 F.3d 199, 205 (1st Cir. 2009). It was undisputed that the radio transmissions from Officer McKay's cruiser establish that he called in to report a stop of Kenney, acknowledged that Kenney had a passenger, and stated that the basis for the stop was Kenney's expired vehicle registration. McKay also asked for another police unit to respond to the scene. That unit acknowledged the request for back up and started to respond.

-7-

Additionally, the Attorney General's report stated that the registration on Kenney's car had expired.

Plaintiff failed to offer any evidence of a constitutional violation as to the initial stop. As the district court pointed out, plaintiff bore the burden of showing a violation and neither argued nor provided evidence that Kenney's vehicle registration was current at the time of the stop. Estate of Kenney, 2012 WL 642810, at *2. It is also noteworthy that such evidence, if it existed, would easily be available to plaintiff. Nothing in the affidavits even purported to contradict this.

Plaintiff's evidence concerning Officer McKay's decision to follow the fleeing Kenney and to conduct the second stop was also deficient. Although there were numerous fact witnesses to the second stop and the shootings, plaintiff did not submit affidavits from any of them. Instead, plaintiff submitted the Nickels affidavit, which contained statements made by Caleb Macaulay, Kenney's passenger, to Nickels during a June 2007 interview. There are a number of reasons why this evidence was insufficient to show a violation of Kenney's Fourth Amendment rights.

Since the focus of plaintiff's appeal is on evidentiary points, we start there. As the trial court properly concluded, Macaulay's statements constitute inadmissible hearsay as they were offered for the truth of their assertions. Fed. R. Civ. P. 56(c)(4) plainly requires that affidavits used to oppose a motion

for summary judgment "must . . . set out facts that would be admissible in evidence," and "[i]t is black-letter law that hearsay evidence cannot be considered on summary judgment for the truth of the matter asserted," Hannon v. Beard, 645 F.3d 45, 49 (1st Cir. 2011) (quoting Dávila, 498 F.3d at 17) (internal quotation marks omitted); see also S.E.C. v. Ficken, 546 F.3d 45, 53 (1st Cir. 2008); Garside, 895 F.2d at 50.

Plaintiff gets no traction from his argument that Macaulay's statements fall within the common law exception to the hearsay rule for "res gestae." Categories of evidence that were once excepted as "res gestae" are now incorporated in either the definition of hearsay itself, Fed. R. Evid. 801, or the defined exceptions to the hearsay rule, Fed. R. Evid. 803-804. See 30C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 7043 (2d ed. 1987). Further, Macaulay's statements, offered more than one month after the May 2007 traffic stop, are too removed in time to qualify as a present sense impression, Fed. R. Evid. 803(1). See United States v. Taveras, 380 F.3d 532, 537 (1st Cir. 2004) (noting that permissible delay may be "a few hours" in "extreme circumstances"); see also United States v. Shoup, 476 F.3d 38, 42 (1st Cir. 2007) (citing Taveras, 380 F.3d at 537) (same).

Independently, Caleb Macaulay's inadmissible statements were also immaterial to whether Officer McKay's use of force during

-9-

the second stop was unlawful. "To establish a Fourth Amendment violation based on excessive force, a plaintiff must show that the defendant officer employed force that was unreasonable under the circumstances." Jennings v. Jones, 499 F.3d 2, 11 (1st Cir. 2007). Courts assess the reasonableness of a particular use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and must account "for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Graham v. Connor, 490 U.S. 386, 396-97 (1989).

The second stop ensued after Kenney unlawfully fled from the initial stop. See, e.g., N.H. Rev. Stat. Ann. § 265:4, I(c) (making it unlawful to fail to stop a vehicle when signaled by an officer); id. § 642:2 (making it unlawful to interfere with an officer attempting to effect an arrest or detention). Officer McKay was not required to give up the chase after Kenney fled, see Scott v. Harris, 550 U.S. 372, 385 (2007), and was entitled to employ "some degree of physical coercion . . . to effect [the second stop]," Graham, 490 U.S. at 396. Faced with an uncooperative motorist, who posed a continued risk of flight, Officer McKay's decisions to push Kenney's vehicle out of the roadway and then, once Kenney's car was stopped, to pepper spray

Kenney, were reasonable under these circumstances. Officer McKay nudged Kenney's vehicle away from an active two-lane highway, which enhanced his own safety and reduced the likelihood of continued flight or injury to others on the roadway. Plaintiff did not proffer any evidence that the force Officer McKay exerted on Kenney's car threatened the safety of Kenney or his passenger. Estate of Kenney, 2012 WL 642810, at *4.

As to McKay's use of pepper spray, the district court explained that, "[u]nlike in cases where the use of pepper spray was held to constitute excessive force, Kenney was not a peaceful, compliant, and secured suspect who could pose no threat to the officer seeking to detain him." Id. Relying on the Eleventh Circuit's opinion in Vinyard v. Wilson, 311 F.3d 1340 (11th Cir. 2002), which noted that "[c]ourts have consistently concluded that using pepper spray is reasonable . . . where the plaintiff was either resisting arrest or refusing police requests," id. at 1348, the district court concluded that Officer McKay's use of pepper spray here was reasonable. There is ample support for the district court's conclusion, see, e.g., Jackson v. City of Bremerton, 268 F.3d 646, 652-53 (9th Cir. 2001); Wagner v. Bay City, Texas, 227 F.3d 316, 324 (5th Cir. 2000), and we agree.

Caleb Macaulay's statements in the Nickels affidavit, even if they were presented in an admissible form, would not alter our analysis. Whether Officer McKay stared at Kenney as they

-11-

passed has nothing to do with anything.  And whether McKay, after the second stop, rushed to Kenney's car and doused Kenney with pepper spray does not come close to rendering McKay's use of force unreasonable.

Much of plaintiff's evidence is an immaterial attempt to show bad blood between Officer McKay and Kenney, in support of an argument that the initial stop was motivated by McKay's bad faith. For similar reasons, even if they were admissible, plaintiff's attempts--disputed by defendants--to tarnish McKay's competence as a police officer are not material.  These efforts miscomprehend the Fourth Amendment issues, which turn on the facts and objective reasonableness, not on questions of underlying motive.  The Supreme Court made clear in Graham that "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force."  490 U.S. at 397.  We do not remotely suggest that the evidence even shows such evil intentions.[3]

Since plaintiff's case against Officer McKay fails and there was no municipal policy at issue, the claims against the town and McKay's supervisors also fail.  See Haley, 657 F.3d at 51 (municipal liability); Seekamp, 109 F.3d at 808 (supervisory liability).  The Rule 59(e) motion was too little and too late.

---

[3] The 2003 incident, amply described in the Attorney General's report, was not relevant to the objective reasonableness of the 2007 events on which the Section 1983 claims in this case rest.

-12-

III.

We <u>affirm</u> the grant of summary judgment.  Costs are awarded to defendants.