JUSTICE HART, specially concurring.
*532 ¶ 70 I join the majority opinion in full. I write separately, however, to express my concern over the trial court's decision to admit highly prejudicial and unrelated evidence under the guise of "res gestae." While I agree with the majority that, in this particular case, the error in admitting the res gestae evidence was harmless, the issue is a close one and I believe that it must be acknowledged as error. Further, I have serious reservations about the continued appropriateness of the res gestae doctrine and believe that, in an appropriate case, this court should consider whether to join other jurisdictions that have abandoned the doctrine. See C.A.R. 35(e)(3) (recognizing, albeit in a different context, the propriety of using a special concurrence to "direct[ ] attention to the shortcomings of existing common law or inadequacies in statutes").
I.
¶ 71 The res gestae doctrine has its roots in common law, where it was initially employed as an exception to the general prohibition on the admission of hearsay and permitted the admission of statements made at the time an event occurred. The idea was that witnesses might need to include these statements to complete the story of what had occurred, and that the statements were reliable because they were spontaneous. See H. Patrick Furman & Ann England, The Expanding Use of the Res Gestae Doctrine , 38 Colo. Law. 35, 35 (2009). Over the years, the doctrine itself has expanded to permit the introduction of evidence well beyond contemporaneous statements. As the majority notes, our definition of res gestae now encompasses any "uncharged misconduct evidence that is intertwined with the charged conduct." Maj. op. ¶ 57.
¶ 72 In this case, some of the evidence was appropriately admitted. In particular, text messages between Zapata and S.M. concerning her alleged sexual assault by the convenience store owner and Zapata's request that she not be at the store on the day of the crime were important to "complete the story of the crime for the jury." In addition to this evidence that explained Zapata's motive and suggested his intent to commit the crime, however, the trial court permitted the prosecution to introduce Zapata's profanity-filled texts about S.M.'s relationship with a new boyfriend who had no connection with the crime and texts to and about S.M.'s family that were similarly crude. The prosecution was also permitted to introduce evidence about Zapata's alleged physical abuse of S.M. during the last six months of their relationship and his controlling behavior toward her during that same time frame.
¶ 73 Because I cannot discern a verifiable and significant connection between the defendant's alleged prior bad acts towards S.M., her new boyfriend, and her family and the subsequent assault of the store clerk, I cannot conclude that this evidence was properly admitted. In other words, I respectfully disagree with the trial court that the jury needed this evidence because it was all part of one big story. To the contrary, this evidence should not have been allowed to go before the jury; it served the prohibited purpose of demonstrating the defendant's purported threatening and violent bad character.
¶ 74 That this evidence was improperly admitted is also shown by the way the prosecutor used it in closing argument: "What else do you want to know about [the defendant]? Prior to the incident you know how he reacts to and what he thinks about people who are messing with [S.M.] And what he would like to do to them." In essence, the jury was encouraged to use the defendant's threatening and violent bad character from the past to determine what happened in the present case, with an unrelated victim.
¶ 75 Our Rules of Evidence provide a specific mechanism in C.R.E. 404(b) for considering whether this kind of otherwise-inadmissible character evidence may be introduced. The evidence admitted in this case as res gestae should have been assessed for whether it met the substantive and procedural requirements of 404(b). Had such an assessment been made, I doubt that the trial court would have permitted the prosecution to use the evidence as it did. Unfortunately, the label "res gestae" short-circuited the evaluation *533 called for in Rule 404(b), as it too often does.
II.
¶ 76 This case would not have been an appropriate vehicle to consider whether Colorado should continue to recognize the res gestae doctrine because the error in admitting the unrelated evidence was harmless. There is, however, good reason for this court, in an appropriate case, to consider whether the doctrine has been rendered obsolete by modern rules of evidence. It is a vague and nearly standardless concept that is applied too expansively to admit otherwise inadmissible evidence. See, e.g ., Edward J. Imwinkelried, The Second Coming of Res Gestae: A Procedural Approach to Untangling the 'Inextricably Intertwined' Theory for Admitting Evidence of an Accused's Uncharged Misconduct , 59 Cath. U. L. Rev. 719, 729-30 (2010) (cataloging some of the wide-ranging criticism of res gestae and noting that "[t]he looseness of the doctrine allows the courts to engage in 'result-oriented' decision-making") (citations omitted). Moreover, the most appropriate contexts for its application are likely already covered by the Colorado Rules of Evidence.
¶ 77 The continued utility of the doctrine has been questioned by a number of prominent experts in the law of evidence. See 2 George E. Dix et al., McCormick on Evidence § 268 (Robert P. Mosteller ed., 7th ed. Supp. 2016) ("[Res gestae's] vagueness and imprecision are apparent."); 4 Clifford S. Fishman & Anne T. McKenna, Jones on Evidence § 24:6 (7th ed. 2017) ("[U]se of the phrase 'res gestae' to delineate a hearsay exception is rightly regarded with disfavor."). One prominent treatise has ventured even further: "The phrase res gestae has long been not only entirely useless, but even positively harmful. It is useless, because every rule of evidence to which it has ever been applied exists as a part of some other well-established principle and can be explained in the terms of that principle." 6 John Henry Wigmore, Evidence in Trials at Common Law § 1767 (James H. Chadbourne rev., 1976).
¶ 78 The Federal Rules of Evidence avoid using the term. See Fed. R. Crim. P. 404(b). And numerous jurisdictions, both state and federal, have rejected the use of the res gestae doctrine. See Kenney v. Floyd , 700 F.3d 604, 609 (1st Cir. 2012) ("Categories of evidence that were once excepted as 'res gestae' are now incorporated in either the definition of hearsay itself, Fed. R. Evid. 801, or the defined exceptions to the hearsay rule, Fed. R. Evid. 803 - 804."); Miller v. Keating , 754 F.2d 507, 509 (3d Cir. 1985) ("The old catchall, 'res gestae ,' is no longer part of the law of evidence."); State v. Fetelee , 117 Hawai'i 53, 175 P.3d 709, 735 (2008) ("[T]he [Hawai'i Rules of Evidence] supersede[ ] the common law res gestae doctrine."); State v. Rose , 206 N.J. 141, 19 A.3d 985, 988 (2011) ("[T]he doctrine of res gestae no longer has vitality in light of the formal Rules of Evidence .").
¶ 79 Of course, there are other jurisdictions that continue to refer to the doctrine. See United States v. Brown , 888 F.3d 829, 836 (6th Cir. 2018) ("This Court recognizes an exception to Rule 404(b) for res gestae evidence where the evidence 'consis[t][s] of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense.' ") (quoting United States v. Olds , 309 Fed. Appx. 967, 974 (6th Cir. 2009) ). Because we have received no briefing on the question here, and because the error in this case was harmless, this is not the moment to consider which of these approaches Colorado should take. But, particularly in light of the expansive use of the doctrine in the trial courts, we might do well to take the matter up in a future case.
I am authorized to state that JUSTICE GABRIEL joins in this concurrence.