# United States Court of Appeals
## For the First Circuit

No. 16-1479

ANDRE WALKER,

Petitioner, Appellant,

v.

SEAN MEDEIROS, Superintendent, MCI-Norfolk,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Torruella, Kayatta, and Barron,
Circuit Judges.

Catherine J. Hinton, with whom Rankin & Sultan was on brief, for appellant.

Matthew P. Landry, Assistant Attorney General, Criminal Bureau, with whom Maura Healey, Attorney General, was on brief, for appellee.

December 21, 2018

**BARRON**, **Circuit Judge**.  Andre Walker appeals from the dismissal of the federal petition for writ of habeas corpus that he brings pursuant to 28 U.S.C. § 2254.  In his petition, he challenges his convictions under Massachusetts law for murder and other offenses on the ground that he received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.[1]  We affirm.

## I.

Walker's convictions arose out of the following events, which are not in dispute.  On September 16, 2000, Francis Stephens and José Astacio were shot at the corner of Glenway and Harlem Streets in the Dorchester neighborhood of Boston, Massachusetts.  Astacio received one gunshot wound to the chest but survived, while Stephens suffered multiple gunshot wounds and died.

In February of 2004, in connection with these shootings, Walker and Willie Johnson were indicted in Suffolk County Superior Court in Boston, Massachusetts for murder and other related

---

[1] The Sixth Amendment, which was incorporated against the states by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, see Gideon v. Wainwright, 372 U.S. 335, 342-43 (1963), provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."  U.S. Const. amend. XI (emphasis added).

Massachusetts law crimes.  The joint trial began on November 9, 2005.

During the trial, the prosecution introduced testimony from Boston Police Department Detective John Martel and eye-witness Sylvester Harrison.  Detective Martel described an interview with Harrison, who picked Walker's picture out of an array of photographs that Martel had presented to him, identifying Walker as the man whom Harrison had observed at the scene of the shootings.  Harrison, for his part, corroborated some of Martel's testimony but testified that he had been pressured by the police into making a selection from the array.  In addition to Martel's and Harrison's testimony, the prosecution also relied at trial on testimony from three other witnesses -- Sharod Clark, Terence Dotson, and Michael Boyd -- each of whom testified to having known Walker and to having, at one point, resided with Walker in the neighborhood surrounding the Franklin Hill housing projects in Boston.  Both Clark and Boyd testified that Walker had been involved in the shootings and that he had described to them his involvement in those shootings.  All three acknowledged during their testimony that they expected that their cooperation with the Commonwealth's investigation would result in their receiving lenient treatment for unrelated charges that were then pending against each of them.

After the jury began deliberations, it sent a message to the trial judge that noted that the jurors were "deadlocked." The jury explained in that message that it feared that it would be unable to reach a unanimous decision. In response to the message, the trial judge instructed the jury to continue deliberating, and the jury responded by asking the trial judge to permit it to review the notes from Detective Martel's interview with Harrison. The trial judge replied that those notes were not in evidence but that the jurors should rely on their "collective memory" of both Detective Martel's testimony concerning Harrison's identification of Walker and the testimony that Harrison himself provided at trial about the identification.

On December 9, 2005, after eight days of deliberations, the jury returned verdicts that found Walker guilty of the following Massachusetts law offenses: first degree murder, armed assault with intent to murder, and carrying an unlicensed firearm. The jury acquitted Johnson of all charges.

The trial judge sentenced Walker to life imprisonment for murder, three to five years of imprisonment for possession of a firearm, and six to eight years of imprisonment for armed assault with intent to murder. Walker both appealed his convictions and filed a motion for post-conviction relief, claiming, among other things, that his defense counsel had provided ineffective assistance of counsel in violation of the Sixth Amendment to the

federal Constitution by failing to move to suppress testimony concerning Harrison's out-of-court identification.

The same judge who conducted Walker's trial presided over an evidentiary hearing on his post-trial motion. In a 137-page order, the judge denied the motion. Commonwealth v. Walker, No. 2004-10099, 2009 WL 335930, at *1 (Mass. Supp. Feb. 11, 2009). Walker then appealed that decision. That appeal was subsequently consolidated with his direct appeal before the Massachusetts Supreme Judicial Court ("SJC"). Among other things, Walker challenged his convictions on the ground that he had received ineffective assistance of counsel in violation of both Massachusetts law and the United States Constitution in consequence of his counsel's failure to move to suppress the evidence of Harrison's out-of-court identification of Walker. Commonwealth v. Walker, 953 N.E.2d 195, 199 (Mass. 2011).

On September 21, 2011, the SJC unanimously affirmed Walker's convictions and affirmed the order denying his motion for post-conviction relief. Id. at 199-200. In doing so, the SJC rejected, among other things, his ineffective assistance of counsel claims. Id.

On December 17, 2012, Walker filed this federal habeas petition in the United States District Court for the District of Massachusetts, pursuant to 28 U.S.C. § 2254. In that petition, he brought a number of claims for relief, including a claim that he

had received ineffective assistance of counsel under the federal Constitution. The District Court denied relief on all of Walker's claims and also denied Walker's request for a certificate of appealability ("COA").

On October 10, 2017, this Court granted Walker's COA, though solely as to the question of whether counsel was constitutionally ineffective, under the federal Constitution, for failing to file a pre-trial motion to suppress the evidence of the out-of-court identification. We now consider Walker's appeal of the District Court's ruling denying that claim for relief.

## II.

As Walker's case was adjudicated on the merits in state court, the Antiterrorism and Effective Death Penalty Act's ("AEDPA") highly deferential standard of review applies. 28 U.S.C. § 2254(d). Under AEDPA, Walker is entitled to habeas relief based on his federal constitutional claim of ineffective assistance of counsel only if he can show that the SJC's ruling rejecting that claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts." Id. Here, the District Court held that the SJC's ruling rejecting Walker's federal constitutional ineffective assistance of counsel claim was neither contrary to nor involved an unreasonable application of United States Supreme

- 6 -

Court precedent. <u>Walker</u> v. <u>Gelb</u>, No. 12-12340-GAO, 2016 WL 1239919, at *2 (D. Mass. Mar. 28, 2016). The District Court also ruled that the SJC's rejection of that claim was not based on an unreasonable factual determination. <u>Id.</u> Reviewing these rulings by the District Court de novo, <u>see</u> <u>Teti</u> v. <u>Bender</u>, 507 F.3d 50, 56 (1st Cir. 2007), we agree.

**A.**

To demonstrate that he received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution, Walker must show both that his defense counsel's performance was constitutionally deficient and that this deficiency prejudiced his case. <u>Strickland</u> v. <u>Washington</u>, 466 U.S. 668, 687 (1984). To show that his counsel's performance was constitutionally deficient, Walker must demonstrate that "counsel's performance was objectively unreasonable 'under prevailing professional norms.'" <u>United States</u> v. <u>Mercedes-De La Cruz</u>, 787 F.3d 61, 67 (1st Cir. 2015) (quoting <u>Strickland</u>, 466 U.S. at 688). This standard is "highly deferential" and thus we must "indulge a strong presumption that . . . under the circumstances, the challenged action 'might be considered sound trial strategy.'" <u>Strickland</u>, 466 U.S. at 689 (quoting <u>Michel</u> v. <u>Louisiana</u>, 350 U.S. 91, 101 (1955)).

In addition, under <u>Strickland</u>, Walker must show that the deficient performance was prejudicial. <u>Id.</u> at 687. Because Walker

- 7 -

bases his ineffective assistance of counsel claim on his defense counsel's failure to file a motion to suppress the evidence concerning Harrison's out-of-court identification of Walker, Walker must, in order to show prejudice, at a minimum show that the motion to suppress would have been granted if it had been made. See Jaynes v. Mitchell, 824 F.3d 187, 196 (1st Cir. 2016) (citing Mercedes-De La Cruz, 787 F.3d at 67). Additionally, Walker must show that, if the motion to suppress had been successful, it is reasonably probable that the proceedings would have ended with a different result. Sleeper v. Spencer, 510 F.3d 32, 39 (1st Cir. 2007) (citing Wiggins v. Smith, 539 U.S. 510, 537 (2003)).

Walker's contention that his counsel's performance was constitutionally deficient is premised on the fact that the United States Supreme Court has held that a defendant's federal constitutional right to due process bars the government's use at trial of evidence of a witness's out-of-court identification of the defendant if the identification procedure employed by the government is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384 (1968). Walker argued to the SJC that the circumstances of the photo array at issue here were constitutionally problematic in just that manner and, thus, that his counsel acted deficiently by not moving to suppress the evidence concerning Harrison's identification, given that Walker

contends that his defense counsel had no strategic reason for failing to do so.  Walker, 953 N.E.2d at 204.

## B.

The District Court rejected Walker's federal habeas challenge to the SJC's ruling on his ineffective assistance of counsel claim.  After carefully reviewing the SJC's decision, so do we.

The SJC rejected the first ground on which Walker premised his ineffective assistance of counsel claim by determining that the judge who rejected his post-trial motion for relief did not clearly err in finding that, contrary to Walker's contention, Harrison had not been pressured by law enforcement to make a selection from the array of photographs.  See id. at 205 (adopting the motion judge's findings as they "were not clearly erroneous").  Like the District Court, we agree that the SJC's ruling on this point must be sustained under AEDPA.

On appeal to us, Walker points to no clear and convincing evidence in the record that law enforcement did pressure Harrison into making a selection from the array of photographs.  Instead, Walker relies primarily on Harrison's account of the identification as evidence that pressure occurred.  But, Harrison's account of the identification is at odds with Detective Martel's testimony that he did not "press" Harrison into making a

- 9 -

selection from the array and that Harrison chose without protestation.

Walker does seize on language from Martel's testimony in which he quoted Harrison as saying "if [I] had to pick" before Harrison made his selection from the array. According to Walker, this part of Harrison's testimony demonstrates that Harrison must have felt pressured into making a selection. But, this statement does not clearly or convincingly do so, as it may readily be understood to show merely that Harrison was making the point that he was less than certain of his choice, even though it was freely made. Thus, we see no basis for overturning the District Court on this point, as AEDPA instructs that we must leave state-court factual findings undisturbed unless the petitioner for habeas relief can show through "clear and convincing evidence" that the state court's finding was unreasonable. 28 U.S.C. § 2254(e)(1).

The SJC also rejected the second ground on which Walker premised his ineffective assistance of counsel claim, by determining that, contrary to Walker's contention, the federal Constitution's Due Process Clause did not require the government to employ the safeguards in conducting the photo array that Walker contended were required but that were not used. Specifically, the SJC rejected Walker's arguments that the identification procedure was constitutionally problematic because law enforcement did not inform Harrison that the suspect's picture might not be included

in the array, did not employ a "double-blind" identification process, did not record Harrison's selection from the array, and did not use a sequential-photographic array. Walker, 953 N.E.2d at 206-07, 208 n.17.

Although Walker challenged the lack of procedural safeguards used in the identification in seeking habeas relief from the District Court, it appears that the District Court did not address the issue. Nevertheless, we may affirm on any ground manifest in the record. See Euromodas, Inc. v. Zanella, Ltd., 368 F.3d 11, 16 (1st Cir. 2004). And, we affirm here because, in now challenging the SJC's holding on this score, Walker fails to identify any United States Supreme Court precedent that clearly establishes that, under the federal Constitution, the procedures he identified as being required must be employed. Instead, he points only to the fact that these procedures were required by the SJC in Commonwealth v. Silva-Santiago, 906 N.E.2d 299 (Mass. 2009), and that they were recommended in a 1999 report on eye-witness evidence that the United States Department of Justice issued. But, Silva-Santiago did not purport to hold that these procedures were required as a matter of federal constitutional law. And the Department of Justice report did not purport to do so either. Thus, Walker has failed to demonstrate -- as AEDPA requires him to demonstrate in order to obtain habeas relief -- that the SJC's

- 11 -

ruling was either contrary to or an unreasonable application of clearly established United States Supreme Court precedent.

Finally, the SJC rejected the only other premise for Walker's ineffective assistance of counsel claim. This premise was that the federal constitutional guarantee of due process prohibited the use at trial of the evidence of Harrison's identification of Walker because that identification was based on an "all-suspect photographic array." In rejecting this contention, however, the SJC did not determine that the federal Constitution permitted the use of all-suspect arrays. In fact, the SJC expressed concerns about the practice by noting that, although it was "not convinced that the rate of false positive identification is greater with all-suspect arrays," it did recognize "that the danger that a false positive identification will result in a wrongful prosecution is greater with" this kind of procedure. Walker, 953 N.E.2d at 208. The SJC even went on to instruct that police should not use photographic arrays containing "fewer than five fillers for every suspect photograph," id., without indicating whether the use of an out-of-court identification at trial based on an array of this type would comport with federal constitutional requirements.

Nevertheless, the SJC ultimately rejected Walker's ineffective assistance of counsel claim, notwithstanding the concerns that the SJC had raised about the use of the all-suspect

- 12 -

array, after applying the "miscarriage of justice" standard described in Commonwealth v. Gonzalez, 824 N.E.2d 843, 852 (Mass. 2005). The SJC did so because:

> [w]e do not conclude that a substantial likelihood of a miscarriage of justice arose from the use of an all-suspect array in this case. . . . [T]he heart of the Commonwealth's case against Walker was the testimony of Clark, Dotson, and Boyd, not Harrison's equivocal and retracted prior identification.

Walker, 953 N.E.2d at 208.[2]

We share the SJC's discomfort with the use of all-suspect arrays, which lack "filler" photographs. The use of only suspects' photos in arrays necessarily increases the difficulty in assessing whether any particular selection from the array is a false or mistaken one, as would be readily apparent if "fillers" were included and one of the "fillers" were selected. Moreover, because the presentation of the array itself may suggest that those depicted in it are more likely to have been involved in the offense than those not depicted, the fact that there are no "fillers" to serve as checks on such false or mistaken selections is all the more troubling. See Richard Gonzales et al., Response Biases in

---

[2] In determining that there was not a "substantial likelihood of a miscarriage of justice," the SJC additionally noted that "[t]he photograph that Harrison identified as the man in the Toyota automobile was not the codefendant; but the codefendant, and not the man identified, was the person charged by the Commonwealth, which suggests that the police did not lock onto a suspect based on Harrison's identification." Walker, 953 N.E.2d at 208.

- 13 -

_Lineups and Showups_, 64 J. Personality & Soc. Psychol. 525, 527 (1993) ("[A] lineup [with fillers] is in principle more fair than a [line up of only suspects] because it distributes the probability of identification of an innocent suspect across the lineup foils, reducing the risk of an identification error."). But, the SJC rested its rejection of this aspect of Walker's ineffective assistance of counsel claim on its finding that his counsel's failure to move to suppress the identification evidence did not result in a "miscarriage of justice" under _Gonzalez_ in light of the other evidence of his guilt put forth at trial. Thus, it is that ruling by the SJC that must be our focus for purposes of assessing the merits of his federal habeas petition.

## c.

Turning to that ruling, we note that the "miscarriage of justice" standard that the SJC applied is a Massachusetts law standard for evaluating a claim of ineffective assistance of counsel. But that test is more defendant-friendly than the test that the United States Supreme Court set forth in _Strickland_ for evaluating a claim of ineffective assistance of counsel under the federal Constitution. See _Knight_ v. _Spencer_, 447 F.3d 6, 10, 15 (1st Cir. 2006). We have therefore held that this "miscarriage of justice" standard "subsume[s]" the federal standard for determining when a _Strickland_ violation has occurred, see _Sleeper_, 510 F.3d at 38, which means that it subsumes both the _Strickland_

- 14 -

test for determining constitutionally deficient performance by defense counsel and the Strickland test for determining whether such deficient performance was prejudicial.

Thus, under AEDPA, so long as the SJC's ruling that there was no "miscarriage of justice" due to the other evidence of Walker's guilt that the jury had before it is not "so lacking in justification" as to be "beyond any possibility for fairminded disagreement," Harrington v. Richter, 562 U.S. 86, 103 (2011), we must defer to it. And, although the District Court does not appear to have addressed Walker's challenge to this aspect of the SJC's ruling, we conclude that, based on the record, Walker's challenge to it must fail. Zanella, 368 F.3d at 16.

The SJC's ruling on that score, after all, necessarily amounts to a determination that there was no prejudice under Strickland because it is not reasonably probable that the outcome of Walker's trial would have differed if the identification evidence from Harrison had been suppressed. And, so understood, we see no basis for concluding that the SJC's determination in that regard defies reason, which, under AEDPA, is the conclusion that we would have to reach to rule for Walker. See Richter, 562 U.S. at 102-03.

Walker does point out in his briefing to us that the record shows that the jury requested the notes from Harrison's identification during its deliberations. But, it is impossible to

- 15 -

know from the record why the jury made that inquiry or how it then affected the verdict. Thus, for purposes of habeas review, that query alone fails to render unreasonable the SJC's judgment that, considered in the context of the case as a whole, the identification's suppression would not (drawing from the federal prejudice standard that the SJC's "miscarriage of justice" standard subsumes) have made it reasonably probable that the proceeding's outcome would have differed. See Sleeper, 510 F.3d at 39 (citing Smith, 539 U.S. at 537).

Nor does the fact that, as Walker also points out, the jury informed the trial judge at one point that it feared that it might be deadlocked. Because the trial was a joint one, it is impossible to know from that representation by the jury whether its concerns pertained to Walker's case or Johnson's, which resulted in an acquittal.

We thus must, like the SJC, consider the rest of the evidence to assess the possible impact of Walker's counsel's failure to have moved to suppress the identification evidence (even assuming that we could find under the AEDPA standard that such a failure constituted deficient performance for purposes of Strickland). Having undertaken that consideration, we cannot conclude that the SJC defied reason in ruling that there was no miscarriage of justice -- and thus, necessarily, that no Strickland violation occurred -- because "the heart of the Commonwealth's

- 16 -

case against Walker was the testimony of Clark, Dotson, and Boyd, not Harrison's equivocal and retracted prior identification." Walker, 953 N.E.2d at 208.

As an initial matter, the record fully supports the SJC's characterization of Harrison's alleged identification as "equivocal and retracted[.]" Id. Indeed, Harrison first testified that he "didn't see who shot the person," before amending his story shortly thereafter by conceding that he saw "a quick image" of the shooter. Id. at 203.

The record also supports the SJC's conclusion that the government's case against Walker did not hinge solely on Harrison's identification. For example, the government produced testimony from local police indicating that Walker was affiliated with a gang, the Franklin Hill Giants, as well as testimony that Walker had expressed a desire for retribution after members of a rival gang shot Richard Green, Franklin Hill's "head man." Id. at 200. Additionally, one of the state's three witnesses, Boyd, testified to knowing Walker personally and in detailed fashion about his conversation with Walker regarding Walker's involvement in the murder. Specifically, Boyd testified that Walker told him how he acquired the getaway vehicle, how he acquired the guns, where he was when he planned the shooting, the fact that he was seeking revenge for earlier gang violence, and the fact that Walker's victim was not actually a member of the targeted gang.

Walker was convicted and Johnson, his co-defendant, was not. But, while Walker contends in his brief to us that the only difference between the government's case against him and its case against Johnson was the evidence of Harrison's identification, the record shows otherwise.

For example, Boyd, who was cooperating with the Commonwealth's investigation of both Walker and Johnson and who had testified to both defendants' involvement in the shootings, offered considerably more detailed testimony regarding Walker's involvement. Boyd did not mention in his testimony regarding his conversation with Johnson anything about either of the victims, the location of the crime, a date, or any other circumstances surrounding the shooting. By contrast, Boyd, in his testimony regarding his conversation with Walker, included all of these details.

Clark's and Dotson's testimony was, similarly, more descriptive of Walker's involvement in the shooting than of Johnson's. Clark, for example, testified that, prior to the shooting, Walker asked Clark to accompany him up the street "[s]o [they] could kill anybody over there." And while Clark did then go on to testify that Johnson also participated in the shooting, his account of Johnson's involvement, notably, lacked any similarly explicit quotations. Dotson, for his part, testified that he had stolen the car that Walker used to commit the murder.

- 18 -

He also testified that he saw Walker get into the car just hours before the shooting, but that he had not seen Johnson at all that day. Nor did Dotson at any point testify that Johnson was involved in the shooting in any way.

In sum, Boyd, Clark, and Dotson each provided detailed incriminating testimony against Walker that differed substantially from the testimony that each of them provided against Johnson, who was acquitted. Additionally, Harrison's own testimony concerning the identification was hardly compelling. We thus cannot say that the SJC's ruling that the evidence, considered as a whole, did not establish that Walker's counsel's failure to move to suppress Harrison's out-of-court identification resulted in a "miscarriage of justice" is unsustainable under AEDPA's deferential review standard. For that reason, despite the fact that the SJC raised understandable concerns about the use of an all-suspect array, we see no basis for concluding that, in this case, the use of that array suffices to warrant the conclusion that Walker is entitled to habeas relief.

### III.

For the foregoing reasons, we **<u>affirm</u>** the District Court's rejection of Walker's petition for habeas relief. The parties shall bear their own costs.